You may begin. Good morning, Your Honors. May it please the Court. My name is Carl Obradier, and I represent the appellants in this case, Zhuhai Gotech and Gotech International, because the issues that pertain to both are largely identical. I will just refer to them as Gotech. We're appealing, of course, the denial of Gotech's motion to vacate a $101 million default judgment entered against it. I'd like to focus today, if I may, on two points. The District Court's lack of personal jurisdiction over my clients and the lack of subject matter jurisdiction. Because the Court lacked either, the default judgment is void under Rule 60b-4, and the District Court, under this Court's well-settled precedence, had no discretion to deny our motion. I was going to point out that this case involves several unique, important, interesting matters of first impression, which they do, but then I set through the oral argument of the first case, and I feel that I can no longer make that representation. But it does remain the case that a $101 million default judgment, based solely on allegations of foreign satellite piracy in Latin America, where it is essentially undisputed that fully of the plaintiff's $100 million judgment was based on false evidence, is worthy of at least substantial scrutiny, both from this Court and from the District Court, which it never received. But shouldn't your client have scrutinized this? I mean, your client was aware of this well before coming into court on the Rule 60 and could have, first of all, come in on a 12b-3 or whatever it is, 12b-1 as well, could have come in, appealed, could have done a lot of things, Rule 59, but waited and waited until we're now in the arena of you having to prove it void, which is a tough one. It is a tough standard in the sense that the and the issues that are most commonly raised in support of that argument are lack of personal jurisdiction and subject matter jurisdiction. But it is this Court's very well-settled precedent, including in the case Jackson v. FIE, and the Supreme Court precedent in the company of Ireland, many other courts, it's universally accepted that a foreign defendant has the absolute right to completely ignore a litigation of which it has notice, but believes that it is not subject to either personal jurisdiction or that the Court does not have subject matter jurisdiction, and then show up after default judgment is entered and challenge jurisdiction. What's happened in this case has taken that right from you. It's just been a decision you didn't show in absence of jurisdiction. And so we're now here on reviewing whether that's the case. When you say there has been a showing that we didn't show absent of jurisdiction, if you look at the one-page orders of the District Court, it's very difficult to determine that the District Court gave any substantial consideration to the arguments that we raised with respect to lack of personal jurisdiction or subject matter jurisdiction. And I think personal jurisdiction, for purposes of the limited time that I have today, is by far the easiest. First of all, of course, this case was filed in Texas Federal Court, and it's undisputed that my clients have zero contacts with Texas. The plaintiff, Nagrovision, never made any argument whatsoever that we were subject to jurisdiction in Texas under the Texas long-arm statute. Instead, it relied on what has been characterized by the Seventh Circuit and other courts as a very unusual statute that is 4K2, which holds that... Nowhere else to go statute. Nowhere else to go. And that is a requirement of the statute. You must affirmatively find that there is no other state in which this case could have been brought suit under that state's federal question. And if it doesn't offend due process, may you look at the entire grouping of contacts from the United States with respect to my client to find that there is personal jurisdiction in this, or frankly, any other District Court in which this suit is brought. In the complaint, as on appeal, Nagrovision relied exclusively on 4K2. But the important thing to notice is that as Nagrovision's documents show, they knew prior to filing their complaint against us in Texas that we had substantial contacts with California, easily sufficient to create personal jurisdiction there. And unlike some 4K2 cases, such as Muriel, for example, or ISI in the Seventh Circuit, their claim directly arose out of the contacts that we had with California. They received what they characterized as a separate crawling of this default judgment for $1.5 million based exclusively on satellite receivers that they alleged, and we admit, were imported in California to California knowingly by us. Frankly, it seems shocking that an intentional court case, an intellectual property case of infringement based on 7,000 satellite receivers, could not support jurisdiction in California. I don't know how that could be defended. We certainly cite California cases saying that even one import intentionally of a product to California that forms the basis for the plaintiff's cause of action is sufficient to support jurisdiction. And I think it's important to notice that they've never challenged that. They've never said, when you look at our allegations, Nagrovision's allegations, when you look at what we say actually happened here, there's no jurisdiction in California. Instead, they've relied on, with due respect to them, a rather weird argument that essentially says, because we challenge the merits, we don't confess judgment, we don't say we're actually guilty of what we're charged of having done, we're stopped from saying that we're subject to jurisdiction in California, even though we expressly conceded that we're subject to jurisdiction in California. And certainly in California, as well as in other cases, in other jurisdictions, jurisdiction is measured based on a prima facie analysis of the plaintiff's complaint. If defendants could defeat jurisdiction merely by saying, we deny the merits, no court would ever have jurisdiction over a defendant. So we expressly conceded, as this Court's precedent in Adams requires, that we're subject to jurisdiction in California, and that if they wish to refile this case in California, we won't object to jurisdiction. But perhaps equally importantly, we demonstrated that even if we had not conceded, the fact that a separate prong of their default judgment alleged in their complaint is based solely on our imports to California, and with respect to the other prong of their judgment. So is that kind of the facial argument, because, you know, in a default context, you admit everything in the complaint. You're saying on the face of the complaint, it shows there is a venue where you could have brought this, and you failing to do that means you don't meet 4K2 on the face of the pleading. Is that the argument? I would just add a slight wrinkle. Okay. As we point out in our papers, we found this somewhat deceptive. In their complaint, they alleged all of our contacts with California, certainly sufficient to establish jurisdiction in California. But because they didn't want to go to California, in every case, they characterized those California contacts as in the United States. But they're... It's not on the face. The face doesn't tell the district court where these contacts happened. That is true. It's not on the face of the complaint. However... So are you saying the face of the complaint in a 4K2 must say where the contacts happened? Well, that gets to a different issue. I don't think it's dispositive, but I'll certainly address it. In the Adams case, this court did say that a defendant may avoid the application of 4K2 simply by conceding to jurisdiction in another state. Well, we've done that. We've conceded to jurisdiction in California. We've done it multiple times. The plaintiffs have raised the argument, and I'm not going to press it here because I am in some sympathy with it, that the Adams case was at a 12B stage on a motion to judgment. You can imagine a defendant showing up and just throwing a dart board at a map of the United States and saying, oh, we're subject to jurisdiction in Alaska. Nobody has any contacts with Alaska. But, you know, that would be sufficient to vacate the default judgment. The Federal Circuit has said that really isn't fair. That encourages gamesmanship. In that context, what the defendant needs to do is just identify a state where suit could have been brought at the time of the filing of the complaint. We've done that. They had, as their papers show, all of the evidence that they needed, all of the evidence that they ever had of our their complaint, as well as their motion for default judgment. But their papers submitted in support of their default judgment show that before they filed the complaint, they knew that we had these imports into California. So the argument is, I'm trying to understand the sort of principle of law you're espousing, and it is that when the complaint shows contacts, whether the complaint says where they are or not, and those contacts are all centered on a state, that you then come in and say, we concede jurisdiction in that state, then that is enough to vacate the default versus the random, let me just pick a state and pretend like I'll go there so that I can get out of this default judgment. That would be our recommendation to the court. Certainly the court's prior Adams decision, which is really the only pronouncement on 4K2, says that all you need to do is concede. It doesn't say that you need to concede a place that actually makes sense. But we certainly have no problem with the court adopting the burden-shifting analysis that many courts have adopted that originated with the First Circuit in Swiss American, that basically says the plaintiff, if it's going to rely on 4K2, has to certify in the first instance, based on knowledge readily available to it, the defendant is not subject to jurisdiction in other states. So on information and belief, as they already pled information and belief to get to 4K2, on information and belief, we can't find anywhere that's the specific place to go, so we're coming to Texas. And then y'all can come in and say, well, no, it's, well, what if that had happened? What if they'd said that? On any information and belief, there isn't a state that would be the right state, so we're coming to Texas because we like Texas. Well... Then would that alter the calculus here? And everything else happened the same way. You waited until the 60B stage and all of that. Would that change the calculus? That's why I say I don't think it's dispositive. I think it would have prevented them from doing what they did, because I don't think they could have made that certification knowing what they knew about California. But certainly we still would have come in and said, there's an overwhelming mountain of contacts with California. That's proved by their own filings and the mere fact that they got a judgment based on our contacts with California, and so the default judgment is void. But I think if they had made that certification to begin with, all of this would have been a void, because I believe that opposing counsel is an honorable, honest person, and he knows he could not have ever possibly made that certification. It was just too clear we were subject to jurisdiction in California. Well, your argument is a pretty good indication of how much context matters. I can't imagine your client, had this not been a default judgment, appearing and saying, absolutely, we have enough contacts with California to be sued there. It's only after the fact that the contacts are being argued, or any argument being made at all, about those contacts. So, I mean, the 60B, I mean, the default judgment is your big hurdle, as you know better than I do. Let's see what the other side has to say about it. Okay. Thank you, Your Honor. May it please the Court, Joseph Boyle for Niagara Vision. Gotek did not consent to jurisdiction in California, and if they did not consent to jurisdiction in California, all of the other personal jurisdiction arguments drop out, and you can infirm personal jurisdiction. The rule in the Fifth Circuit is Adams, and Adams says if they don't consent to jurisdiction at another forum, then the district court is allowed to use 4K2. Gotek filed a 25-page motion to vacate the default judgment, but they only spent two of those pages on personal jurisdiction. In those two pages, they only raised two arguments. The first asked the district court to adopt an out-of-circuit pleading test for 4K2, the certification test, saying that you have to have magic words in your complaint certifying the absence of jurisdiction in any other state. Within that first argument, they include a sentence that says, we could never have met the certification standard because, quote, while defendants dispute the truth of plaintiff's allegations, it is certainly the case that if they were assumed to be true, jurisdiction would lie in California. That's not consent. That's not a voluntary acquiescence to jurisdiction in the state of California. That's an observation of what the legal conclusion would be if certain facts were taken as true. But it's a conditional statement. We can look at just that one sentence that they're hanging their hat on and apply a rule of grammar to it. The rule of grammar is, what does it mean when you introduce a clause using the word if? It means it's a conditional clause. It's not a declarative affirmative statement. Grammatically, using the word, if these facts were assumed to be true, then jurisdiction would lie in California is more a comment about how a legal conclusion could be reached versus an affirmative consent and waiver of jurisdiction in California. Take it in another context. If a judge asks a defendant, do you plead guilty? And the answer is, well, if the facts are as the prosecution alleges them, then I would certainly be guilty. That's not a consent to a guilty plea. They're not consenting to jurisdiction with that one sentence on page 1360 on the record on appeal. And again, there's only two pages of personal between making the conditional comment about the logic chain and making an affirmative waiver of consent. NAGRAvision, in its brief, opines on what the motive for that may be. And it may be that the reason they were hedging their bets and hedging their language in the brief is they're trying to take an inconsistent position in litigation occurring in Hong Kong, where they need to be taking the position in Hong Kong that they are not subject to jurisdiction in the United States. So they're trying to be careful with their words. So what they asked the district court to do is drop the standard down extraordinarily low. They said, you should actually interpret the Adams rule to include the converse, that so long as we consent, then you cannot use 4K2, versus the affirmative way that Adams has stated, which is absence of consent means that you can use it. But they didn't step over the hurdle. They didn't take the next step and say, we consent to jurisdiction in California. And if they had done that, then we might be in a different situation. So what about their reply brief? JUSTICE SCALIA. Let me ask you about that. Are you saying you would interpret the case law that exists, that if they had an affirmative statement that satisfied whatever standard you want to apply, that they are consenting to jurisdiction? That they would have been entitled to have the default judgment set aside? No. Our position is you would then go to the next step. Let me back up. The test is either this. Is it consent alone or is it consent plus? Their argument is consent alone satisfies Adams. But that's actually a logical fallacy. That's the converse of the holding in Adams. The holding in Adams is if there's no consent, then the district court may use 4K2. But we don't include in Adams the opposite statement or the converse of the statement. Well, if there is consent, then you can't use it. Our position is that it's a consent plus test for jurisdiction under Adams. That you must consent and then you have to move on and prove that your contacts with the forum did create jurisdiction, if that makes sense. So let's move on then. So let's assume if they did unilateral consent to jurisdiction by the defendant alone can't satisfy Adams. And there's two reasons that's true. The first is for the reasons set forth in the Muriel case where the court said adopting this kind of all I have to do is say I'm subject to jurisdiction in Guam and it doesn't matter if I'm really subject to jurisdiction in Guam. That encourages sandbagging and gamesmanship. The second reason is the way 4K2 reads, the text of the rule says the court can use 4K2 or jurisdiction is appropriate so long as the defendant is not subject to jurisdiction in a state court of general jurisdiction. That reads a lot like motions to transfer venue under 1404A. In a motion to transfer 1404A, a district court can transfer any civil action to a district where it could be brought or might be brought. So there's a temporal test. Do you test that at the time that the complaint is filed or do you test it later after motions are filed? So the Supreme Court addressed this in the motion to transfer venue context back in 1960. It resolved a split between the Fifth and Seventh Circuit. Fifth Circuit had an opinion that said, well, if a defendant unilaterally consents to venue somewhere else, then that means it's a forum where this could be brought. And the Seventh Circuit said, no, the unilateral wishes of a defendant don't matter. You have that where it could be brought means where it could be brought at the inception of the case without regard to the unilateral wishes of the defendant. And that case is Blaski. It's 363 U.S. 335. It's just an analogy, right? I mean, it's not about 4K2. It's not about 60B. But if we adopt the rule that Adams requires a consent plus the truth that there really is jurisdiction, then you have horizontal consistency between retreat 1404. Okay. Well, let's look at Adams. I mean, I'm looking at it. It doesn't use the word consent. The closest it comes is using the word concede. It says, we agree with the Seventh Circuit that a piecemeal analysis of the existence of jurisdiction in all 50 states is not necessary. Rather, so long as the defendant does not concede to jurisdiction in other states, the court may use 4K2. C-E-G-I-S-I. And then this is the quote from the Seventh Circuit case. If the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then they can use 4K2. And then it says here, the UMS contested New York and didn't identify any other states. So it didn't say you have to come in and go, I hereby agree that if you had this case in California, I would not impose jurisdiction. Instead, you have to identify another where suit is possible. And didn't they do that? I would disagree with one part of that, which is Adams, the second part of the Adams quote says, because UMS has not offered other venues in this country where personal jurisdiction would attach. So I'm focusing on the words would attach. What does would attach mean? Does would attach mean would attach when the complaint was filed? Like, do we just stick a pin in the calendar on that date and say, do we look at it independent of consent? Or do we let a defendant create facts after filing of a lawsuit that affects the forums in which the case could be brought? No, but I mean, what they're saying is a little bit more specific here. They're saying you have, and I'm making it up, paragraphs 23 through 27 of the complaint, talk about all this stuff that GO-TEC did wrong. Those all happened in California. And therefore, they're not making up a state. They're actually giving, they're just adding a state to your own allegations. You're saying XYZ happened, happened, happened, happened. And all of that happened in California. And so then they're pointing out that, yeah, you had another place. It wasn't like we stole one thing in California, another in Alabama, another in Montana, another in New York. And so all of those combined are good enough, but we can't find one state. They're saying your own complaint identifies a bunch of stuff that all happened in California. What's wrong with that argument? So what's wrong with that argument is that they should have then taken those facts and in their two or however many pages that they wanted to devote to the district court, they should have shown, made a showing how those facts, one, are contacts with California versus, as we characterize them, contacts with the United States as a whole. And two, they should have used words like minimum contacts, locus of the tort, purposeful availment, purposeful direction. They needed to show how the facts that are in the complaint create personal jurisdiction in California. They don't do that. They have one sentence on that page 1360 of the record. The only thing they say to the district court is the preponderance of GoTex contacts were with California. Preponderance of the contacts isn't a minimum contacts test. Preponderance or numerosity of contacts is at best an element of due process analysis. The quantum or number of contacts you have with a geographic area, that's not the test for specific jurisdiction, right? In Burger King, we rejected mechanical rules for jurisdiction. We don't say, there's no rule that says... Right, but the hard part here is they don't want to agree that they did anything wrong, number one. Number two, I'm not sure Adams requires that they agree that they're subject to suit in the United States at all. I think what they're saying is, taking your pleadings as true, that all of this stuff happened, this stuff all happened in California, so you have a place to go and 4K2 isn't the right standard. And I guess I'm not understanding what's wrong with that argument. It's two reasons. Number one is, every contact with the United States will happen in some interpretation that, well, as long as we can point to the geography in which the contact occurred, that will always gut 4K2. So that can't be the rule. The second is, number two, the contacts as we characterize them aren't with the state of California. California was involved, for example, the shipments of receivers. The shipments of satellite receivers went to distributors in California. Those were not shipments to consumers in California. Their own executives, Sun Wenbo, their director of overseas marketing, and then for the other defendant, Mr. Mann, they both disclaim in their declarations and affirmations any knowledge of the ultimate destination of the shipments of receivers that they made. They say, the U.S. is not a big market for us, we don't do a lot of distributors in California, but we don't know where they sold them to. So what they're asking you to do is just, or the district court is to infer that if a shipment hits California, a mechanical rule applies, that means jurisdiction will be proper in California. Our argument is no. You're welcome to use that fact, but before the district court, you need to brief out why shipments to California equal specific jurisdiction. And you didn't do that. You used one sentence that said the preponderance of our contacts were in California, and then they cite two cases. The first case is in-ray capacitor antitrust litigation. So that raises a red flag. Antitrust litigation, that's a Clayton Act case. Minimum contacts under a Clayton Act case are based on the U.S. as a whole, not an individual state. So that case doesn't help them. The second case they cite is Telemac. Telemac is a patent case. A patent case relies on federal circuit law, not Ninth Circuit or California law. And second, there's a special rule in patent litigation that says the locus of injury is wherever the product is sold. So neither of those help their specific jurisdiction argument. Our position is that because personal jurisdiction is waivable, and because if you don't brief an argument to the district court or on appeal, if you don't brief it right, then you can waive the argument. So it's not enough for them to just say, hey, they allege 4K2 jurisdiction, but because 4K2 jurisdiction always involves some stepping on a particular state, that you should infer that that means state jurisdiction has been created, rather than 4K2 jurisdiction. We just don't think that's the right reading of the rule. That you have to be able to have, if that's the rule, then 4K2 doesn't exist anymore. Because you will, whatever the contact is will always be deemed under their rule to apply to the individual state. I'm not saying they couldn't have made the argument. They could have picked a lot more pages to use and said, here's what the California long arm says. Here is the test for specific jurisdiction under California law. Here are the shipments that went to California. Here are cases that say, these shipments going to California equal jurisdiction. But that's still requiring them to concede jurisdiction. It seems to me that the import of this term, concede, when you view it in light of the quote here, is the kind of the if. Assuming Arguendo were subject to jurisdiction in the U.S., it would be in California because that's where the contacts you allege occur. Why can't that be acceptable? Because it seems kind of unfair to me to make someone who has a general challenge to jurisdiction in the U.S., but who thinks if there is, it's got to be in California, that you're not allowed to make that kind of if-then argument. I think they can still make the if-then argument. But the other part of it, I guess, is that 4K2 doesn't have burden shifting in it. 4K2 just says, service of the summons on a defendant is good for personal jurisdiction so long as they're not subject to jurisdiction, to any state's court of general jurisdiction. So that's in the rule. That's in 4K2. That's what got laid down. So if they want to defeat the rule, there's two ways to do it. One is the whole 50-state analysis test, which is run through every 50, put the burden on the plaintiff to run through all 50 states and show that they're affirmatively not subject to jurisdiction in any of those 50 states. Or you can burden shift, which is what Swiss America said and what Adam said, which is, to make this smoother, we're going to put a presumption in place. The presumption is, if you don't concede, then we get to use the rule. And so that's why I say it's a two-part test. The first thing we have to look at is, did they concede the jurisdiction? And if they don't concede the jurisdiction, the district court got to use 4K2. Because we get the benefit of the burden shifting rule. And if they did concede, my next point is, you have to move to the next step, which is, are you conceding to a place in which jurisdiction existed? And you've got to make the showing. It's their burden to, they can't just say, you touched the United States and that was in Colorado, so jurisdiction is proper in California. In Colorado, they've got to cite the standard, do the work, show the rule, and prove to the district court that those contacts would cause jurisdiction there. So you're saying, in response to their argument that you needed to use magic words, that they needed to use magic words? Not magic words. Briefing. I think it would be, it's the difference between briefing an issue to the district court and not briefing it. The only thing they told the district court is, the preponderance of our contacts were in California. But number one, I don't think the preponderance of their contacts were in California. Because the servers at issue in this case were in places like Colorado, Illinois, Washington. They were spread around. Although the receivers were shipped to the port of Los Angeles and shipped to distributors in California, we allege affirmatively in the complaint that those receivers were shipped for distribution across the United States. So our client, Niagara Vision, affirmatively alleges it's a nationwide distribution of a product. And step back. What interest would the California State Court have in, you know, in this kind of case? Like when you get into questioning why, you know, why wouldn't California be the best place for this? You know, this isn't an interest of the California sovereign about receivers coming into their port that get shipped across the United States. The second thing I want to make sure I get to is the notion that the shipments to California were sufficient among themselves for jurisdiction. Every one of their cases about FOB shipments, the shipments were shipped FOB, which means title transferred in China or Hong Kong, right? Our cases distinguish their cases in saying that FOB shipments alone are not sufficient to establish jurisdiction in a particular state, and particularly with respect to California. Every new case that they include in their reply brief is not an FOB alone case. Every single one of their cases is an FOB plus. It's FOB plus some other factor, such as foreseeability that a California consumer was going to purchase it, or that they were providing warranty work to people in California to go along with those sales. There's not a single case that they have that creates a bright line rule that says an FOB shipment to California would be enough for specific jurisdiction. And our position would be their failure to prove that point to the district court means that the district court was not a void judgment. It's not a gigantic error for them to look at what they briefed and say, you didn't consent to jurisdiction in California, number one. And number two, even if you did, you didn't prove that those contacts with California would create specific jurisdiction. The last thing I just want to mention is that it's true that the size of the judgment in this case is significant. But the size of the judgment does not outweigh other factors, such as their intentional failure to default. And it's not harsh to hold them responsible for the consequences of their own decisions. Thank you. First of all, Your Honors, I can say categorically that everything Mr. Boyle says that we should have done, we didn't. Quote from our brief, defendant's consent to personal jurisdiction in California and will not challenge personal jurisdiction if plaintiff recommences this action against them in that forum. How is that not adequate consent? Which document are you reading? That would be our reply brief in the district court. It's a reply brief, though. The district court. Okay. The district court. Now, I would point out that in ISI, the court specifically said, if only the defendant had conceded an oral argument when asked that it was subject to jurisdiction in another forum, that would have disposed of the 4K2 inquiry. So there's no rule that there has to be talismanic words of consent at a particular stage, particularly in the initial brief in the district court. Now, I would also very much disagree with Mr. Boyle's statement that we failed to concede adequately if it were required in our initial brief to the district court. There we said, while defendants do not concede the truth of plaintiff's allegations, nor should they be required to, they certainly concede that if the allegations in plaintiff's complaint are assumed to be true, jurisdiction is proper in California. As we explained, defendant's position essentially is that we have to confess judgment on the merits. We have to say these allegations of wrongdoing in California are true, or else we deny jurisdiction in California. But as we cite in the Bancroft case, California case among others, in California, as in most places, jurisdiction is evaluated on a prima facie pleading case. You know, if the plaintiff pleads adequate allegations to subject us to jurisdiction, we're subject to jurisdiction. Our only point and the caveat that if they are assumed to be true was to make clear that we weren't conceding the merits of the case at the same time that we conceded jurisdiction. So let me ask you this. If we were to accept your argument and reverse the district court, which would then result in a dismissal without prejudice of this case, and they went the next day after that dismissal and filed in California, you would not object to jurisdiction there? Absolutely, Your Honor. We would not. Okay. And the statute of limitations that's involved would be told during the period of this lawsuit? According to the law of the Federal courts, it would not be told, but it's also the case that it would not have run, because it's a lengthy period of statute of limitations and they allege wrongdoing going up through 2015. I'm sure you're doing your best to waive no defenses if that is the approach and the case is re-filed. Well, we certainly wouldn't waive defenses on the merits. We would make the same subject matter jurisdiction arguments. We would still say we didn't do any of this, but we would not make a personal jurisdiction defense. And that's all that Adams requires. We — and I don't want to — I only have a few minutes. I don't want to — I don't have time to go in detail through all of the evidence. But in our brief, we show specific evidence with specific sites to the records that, indeed, they did know about all of our contacts with California before they filed their complaint. They did all of their investigation, all of their testing, and they had all of that information at hand. So this is not a case of us coming in with later found evidence that they could use to say, well, that's fine now, but we didn't know about it at the time. If you were to adopt the standard, which the court has not yet adopted, that says we have to identify a form in which we could have been sued at the time that they sued us. Again, I could give you a recitation of all of the record sites, but it is in our brief. But they put in a substantial amount of evidence showing their own tests, their own investigations, and as they admit, all of these were completed months before they actually filed their complaint. So yes, they knew about our contacts with California, and they could have brought suit there. And this would be the first case, in our knowledge, that any court in the United States out of contacts with a forum is insufficient to confer jurisdiction in that forum. And indeed, I will close by saying that Niagara Vision itself concedes that courts have held that one single act of targeting a forum with a product that it knows will end up there, even FOB, so long as it knows it will end up there, is sufficient to confer jurisdiction. Thank you, Your Honor. Thank you both for your presentation today.